**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**KAMEON SUPREME AARON**                                    **PLAINTIFF**
*ADC #129521*

**v.**                          **No: 4:24-cv-00838-BSM-PSH**

**GETRY SMITH**                                              **DEFENDANT**

## PROPOSED FINDINGS AND RECOMMENDATION

## INSTRUCTIONS

The following Recommendation has been sent to United States District Judge

Brian S. Miller. You may file written objections to all or part of this

Recommendation.  If you do so, those objections must: (1) specifically explain the

factual and/or legal basis for your objection, and (2) be received by the Clerk of this

Court within fourteen (14) days of this Recommendation.  By not objecting, you

may waive the right to appeal questions of fact.

## DISPOSITION

### I. Introduction

Plaintiff Kameon Supreme Aaron, an inmate at the Arkansas Division of

Correction's Grimes Unit, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on

October 2, 2024 (Doc. No. 2).  Aaron subsequently filed an amended complaint

(Doc. No. 4).   In the Amended Complaint, Aaron alleged that on June 20, 2024,

defendant Sergeant Getry Smith sprayed him with mace while he was attempting to hang himself and then wrote him a false disciplinary. Doc. No. 4 at 4-7. Aaron claimed that the use of the chemical spray was excessive and that Smith acted with a retaliatory motive because Aaron had previously informed ADC officials of a criminal enterprise at the Cummins Unit between inmates and staff. *Id.* Aaron seeks both injunctive and monetary relief against Smith in his official and personal capacities. *Id.* at 3 & 10. Aaron's excessive force and retaliation claims against Smith are the only claims remaining in this case. *See* Doc. Nos. 6 & 10.

Before the Court is Smith's motion for summary judgment, supporting brief, statement of undisputed material facts, and several exhibits (Doc. Nos. 37-43). Although Aaron was notified of his opportunity to file a response, he did not do so. *See* Doc. No. 45. He also failed to file a statement setting forth disputed facts he believes must be decided at trial as required by Local Rule 56.1. Because Aaron failed to controvert the facts set forth in Smith's statement of facts, Doc. No. 42, those facts are deemed admitted. *See* Local Rule 56.1(c). Smith's statement of facts, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute, and Smith is entitled to judgment as a matter of law.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact

and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but instead must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes

that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Facts[1]

#### *June 20, 2024 Use of Force*

In his deposition, Aaron testified that he had attempted suicide on multiple occasions, with his most recent attempt three days prior to June 20. *Aaron Deposition* at 32:7-33:17, 47:1-8, 48:25-49:6, 58:6-8. He was placed on treatment precaution[2] as a result. *Id.* at 48:21-24. On June 20, Aaron tore the paper gown he was wearing into strips, twisted the strips, and then braided them together. *Id.* at 57:10-11. He explained that he "would braid it real tight, real tough, real tight where it might not hold your weight but you could strangle somebody with it." *Id.* at 57:21-23. After braiding the gown, Aaron stood up on the concrete bed in his cell and looped the gown around the bars at the top of the cell. *Id.* at 59:4-13, 60:1-7. He

---

[1] These facts were taken from Smith's statement of undisputed material facts (Doc. No. 42) and the evidence provided in support, including video recordings of the incident (Doc. No. 43) and Aaron's deposition testimony (the "*Aaron Deposition*") (Doc. No. 37-11). Opinions, legal conclusions, and immaterial facts are omitted.

[2] In his declaration, Smith explained that the south wing of the Cummins Unit houses inmates that are in restrictive housing or are on treatment precaution. Doc. No. 37-1, *Declaration of Getry Smith ("Smith Declaration"),* at ¶ 5. He further explained that inmates are placed on treatment precaution by mental health staff when they are deemed to be at risk of harm to themselves or others. *Id.* at ¶ 7.

then placed the makeshift noose around his neck and started spinning around to tighten the noose. *Id.* at 60:8-13.

According to Aaron, he had wrapped a sleeping bag around himself before he began to spin with the noose on his neck. *Aaron Deposition* at 60:15-24. He acknowledged that even though he had the sleeping bag held up high, his neck and head were exposed. *Id.* at 61:7-19. Aaron stated that he was never unconscious during the suicide attempt but began to feel lightheaded as if he was going to pass out, which was his goal. *Id.* at 63:3-9. He said that before Smith arrived, he heard Jessica Allen and Corporal Anderson in the hallway, and heard Allen say, "Don't just stand there, stop him." *Id.* at 63:10-23. Smith then sprayed him with mace. *Id.* at 64:24-65:4. Aaron explained that his back was covered up with the sleeping bag, and his back was facing Smith when he was sprayed. *Aaron Deposition* at 61:23-62:17. He admitted that he was not sprayed directly in his face and acknowledged that he received no physical injury apart from the side effects of chemical spray. *Id.* at 62:24-63:2, 76:8-14, 95:20-96:7. Aaron claimed he received no order or instruction to come down from the bed and was not warned before Smith sprayed him. *Id.* at 51:3-10, 81:5-15. Aaron acknowledged that Smith's use of the spray startled him and stopped him from harming himself. *Id.* at 66:1-4, 70:10-12. Once sprayed, he stepped off the concrete slab and the noose broke. *Id.* at 65:9-10.

According to Smith's declaration, he was conducting a security round on the south wing of the Cummins Unit at approximately 4:40 p.m. on June 20, 2024. *Smith Declaration* at ¶ 4. When Smith approached south wing cell S-11, he observed Aaron standing on his bed trying to hang himself inside the cell. *Id.* at ¶ 9. Aaron's paper gown was braided and tied around his neck. *Id.* Smith explained that Aaron's back was facing him and he was wrapped in a sleeping bag which partially blocked his view and acted as a barrier between him and the cell. *Id.* at ¶¶ 10 & 12. According to Smith, he contacted his supervisor, Lieutenant Corey Haynie, on the radio, and instructed Aaron to get down from his bed, but Aaron did not do so. *Id.* at ¶ 11. Smith then deployed a short burst of OC spray into the cell, and Aaron quickly came down from his bed. *Id.* at ¶¶ 13-14. When Haynie arrived, he directed Smith to obtain the key to Aaron's cell from the control booth; once Smith returned with the key, Haynie cut the braided paper gown from Aaron's neck, and Smith and Haynie escorted Aaron to the south wing shower for decontamination.[3] *Id.* at ¶¶ 15-16. After decontamination, Aaron was taken to the infirmary in a restraint chair because he had been combative with staff, and was then escorted to his cell. *Id.* at

---

[3] It is undisputed that Aaron was allowed to decontaminate in the shower and taken to the infirmary. *See* Doc. No. 42, *Statement of Undisputed Facts,* at ¶¶ 18, 20 & 32; *Aaron Deposition* at 17:24-25-18:1-6, 74:14-25-75:1-24. Aaron testified that he attempted suicide again in the shower (*id.* at 72:15-73:1-9), but he did not bring any claims relating to that attempt, the decontamination process, or the medical treatment he received. *See* Doc. No. 4 at 4-9.

¶¶ 18-21. Medical staff recorded no physical injuries or health complaints. Doc. No. 37-2, *Incident Report,* at 5.

The incident is captured in video footage from June 20, 2024. Doc. No. 37-7, *Video Footage Filed Under Seal* (flash drive docketed at Doc. No. 43). In the footage, Aaron can be seen standing on the bed in his cell wrapped in a sleeping bag. *Cell S-11 Footage* at 4:44:43 - 4:45:03. Smith is seen walking in front of the cell before he quickly administers a short burst of OC spray into the cell. *Id.* at 4:44:43-4:45:02. The burst of spray is so brief that the footage offers no visual confirmation that any spray was dispersed. *Id.* at 4:45:02. When he was sprayed, Aaron's back was facing Smith and he was still covered up with the sleeping bag. *Id.* at 4:45:01. It is clear from the footage that while Smith sprayed into the cell, he did not spray Aaron directly. *Id.* at 4:44:43-4:45:05. Aaron quickly came down from the bed after the burst of spray was administered. *Id.* at 4:45:03 - 4:45:06. Hallway footage shows Aaron being escorted down the hall minutes later. *Hallway Cam One Footage* at 4:48:12 – 4:48:36.

According to the ADC's Use of Force Policy, non-deadly force may be used, when necessary, in order to restrain, maintain or regain control of an inmate. Doc. No. 37-9, *Administrative Directive 17-06;* Doc. No. 37-8, *Administrative Regulation 409 ("AR 409").* Non-deadly force is also authorized for use to compel compliance with orders and to protect individuals. *Id.* AR 409 authorizes the use of chemical

agents when the use of non-deadly force is necessary. *AR 409* at 2. Whenever force is used, internal affairs is notified, and an investigation is conducted. Doc. No. 37-4, *Declaration of Jimmy Coleman IV* ("*Coleman Declaration*"), at ¶ 29; Doc. No. 37-10, *Internal Affairs Documentation* (filed under seal at Doc. No. 43 on flash drive). Internal Affairs was informed of the use of force involving Aaron on June 20, 2024, and determined that the use of force was appropriate and according to policy. *Coleman Declaration* at ¶ 29; Doc. No. 37-6, *Declaration of Thomas Rowland,* at ¶¶ 26-27; *Internal Affairs Documentation*.

### June 20, 2024 Disciplinary

After returning Aaron to his cell, Smith wrote Aaron a disciplinary for the following code violations: 2-15, Tampering w/Or Blocking Lock; 12-3, Failure to Obey Order of Staff; 7-1, Unauthorized Use of State Property; and 8-4, Destruction of Property. *Smith Declaration* at ¶ 22; Doc. No. 37-3, *Disciplinary*. Beyond preparing the disciplinary documentation, Smith had no further involvement in the disciplinary process. *Smith Declaration* at ¶ 23. On June 25, 2024, Aaron was notified of the disciplinary charges, and he was also transferred to another facility for unrelated reasons. Doc. No. 37-3, *Disciplinary,* at 3; *Coleman Declaration* at ¶ 34.

On July 3, 2024, Major Jimmy Coleman dismissed the disciplinary because the time for a hearing had expired. *Coleman Declaration* at ¶ 35. According to

ADC policy, a disciplinary hearing must take place no more than seven business days after a disciplinary is written, unless an authorized extension is requested. *Id.* at ¶ 36. Coleman does not know why an extension was not requested. *Id.* at ¶ 37. Coleman and Deputy Warden Robert Pierce both acknowledged that the disciplinary charges were appropriate, credible, and supported by evidence. *Id.* at ¶ 39; Doc. No. 37-5, *Declaration of Robert Pierce,* at ¶ 29.

According to Smith, he was unaware that Aaron had allegedly informed prison officials of a criminal enterprise involving inmates and staff at the Cummins Unit prior to Aaron filing this lawsuit. *Smith Declaration* at ¶ 24. He stated that his use of the chemical spray and the subsequent disciplinary were both a result of Aaron's actions on June 20, 2024. *Id.* at ¶ 25. Aaron claims he spoke with ADC officials regarding the criminal enterprise on April 10, 2024, two months before the use of force incident.[4] Doc. No. 4 at 4; *Aaron Deposition* at 39:9-19. Aaron testified in his deposition that after he informed ADC officials of a criminal enterprise at the Cummins Unit, he was threatened by officers and inmates for snitching. *Aaron Deposition* at 39:20-40:12, 41:5-42:14. He admitted that Smith never threatened him. *Id.* at 42:15-19. When asked whether Smith was aware of his alleged disclosure in his deposition, Aaron responded: "Yes, he was aware. He was on the

---

[4] Deputy Warden Pierce has no recollection of Aaron ever informing him or any other ADC official of any criminal enterprise occurring at the Cummins Unit. *Pierce Declaration* at ¶ 30.

shift. He was aware that I was on treatment precaution . . . when you got an inmate like me, they gotta know what's going on, they gotta know. . . . " *Aaron Deposition* at 42:20-43:3. Aaron testified he never personally informed Smith about any criminal enterprise at the Cummins Unit. *Id.* at 38:1-4. He also testified that prior to the use of force on June 20, 2024, Aaron had never had a bad interaction with Smith. *Id.* at 43:21-44:4. Finally, Aaron acknowledged that using his sleeping bag to block the cell door was a rule violation that warranted a disciplinary. *Id.* at 84:23-25.

## IV. Analysis

### A. Sovereign Immunity

Smith argues that Aaron's monetary claims against him in his official capacity are barred by sovereign immunity. Doc. No. 38 at 5-6. A suit against a state employee in his or her official capacity is in essence a suit against the State of Arkansas, and any official capacity claim for monetary damages against that defendant is barred by the doctrine of sovereign immunity. *Will v. Michigan Department of State Police, et al.*, 491 U.S. 58, 71 (1989)*; Nix v. Norman*, 879 F.2d 429, 431-432 (8th Cir. 1989). Accordingly, Aaron's official capacity claims for money damages should be dismissed with prejudice.

Aaron also seeks injunctive relief in the form of an order requiring all correctional officers to wear body cameras on their person while working in all ADC

prison units.  Doc. No. 4 at 10.  However, while the doctrine of sovereign immunity does not apply to a request for injunctive relief, *see Larson v. Kempker*, 414 F.3d 936, 939-40 (8th Cir. 2005), Aaron's request for injunctive relief is moot.[5]  He is no longer incarcerated at the Cummins Unit where defendant Smith works.  *See generally Martin v. Sargent,* 780 F.2d 1334, 1337 (8th Cir. 1985) ("[A] prisoner's claim for injunctive relief to improve prison conditions is moot if he or she is no longer subject to those conditions.").

### B.    *Qualified Immunity*

Smith asserts that he is entitled to qualified immunity with respect to Aaron's individual capacity claims.  Doc. No. 38 at 6-21.  To determine whether defendants are entitled to qualified immunity, the Court must determine:  (1) "whether the facts alleged or shown, construed in the light most favorable to [plaintiff], establish the

---

[5] Aaron's request is also overly broad in that he requests *all* officers to wear body cameras.  The PLRA requires that injunctions with respect to prison conditions be narrowly tailored.  *See* 18 U.S.C. § 3626(a)(1).  The PLRA states:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of any Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the federal right. *The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.*

18 U.S.C. § 3626(a)(1) (emphasis added).

violation of a constitutional or statutory right," and (2) "whether that constitutional right was clearly established as of [the time of the relevant conduct], such that a reasonable official would have known that [his or her] actions were unlawful." *Scott v. Benson*, 742 F.3d 335, 339 (8th Cir. 2014) (quoting *Krout v. Goemner*, 583 F.3d 557, 564 (8th Cir. 2009); *see also Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### 1.    Excessive Force Claim

Aaron argues that Smith used excessive force when he sprayed him on June 20, 2024. Doc. No. 4 at 9. The unnecessary and wanton infliction of pain violates the Eighth Amendment's prohibition on cruel and unusual punishment. "Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the 'core judicial inquiry' is whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jones v. Shields*, 207 F.3d 491, 495 (8th Cir. 2000) (quoting *Hudson v. McMillian,* 503 U.S. 1, 6–7). *See also Whitley v. Albers*, 475 U.S. 312, 322 (1986) (holding that, in an excessive force case, there must be "a reliable inference of wantonness," and not "a mere dispute over the reasonableness of particular use of

force or the existence of arguably superior alternatives"). Factors which inform this inquiry include the need for the application of physical force; the relationship between the need for physical force and the amount of force applied; and the extent of injury suffered by the inmate.[6] *Jones v. Shields*, 207 F.3d at 495. Unless "'it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain . . . the case should not go to the jury.'" *Johnson v. Bi-State Justice Ctr./Arkansas Dep't of Corr.*, 12 F.3d 133, 136 (8th Cir. 1993) (*citing Whitley,* 475 U.S. at 322). The Eighth Circuit Court of Appeals has further held:

> [W]hen an official's intent is an element of the § 1983 claim, as it is in Eighth Amendment excessive force claims, and if the official has made a properly supported motion for summary judgment based on qualified immunity, the plaintiff "must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive."

---

[6] A plaintiff need not allege significant injuries to state an excessive force claim. *See Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178-79 (2010) (abrogating the *de minimis injury* rule in excessive force cases, and clarifying that the extent of the injury is only one factor to be considered when resolving the "core judicial injury" of "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm"); *Williams v. Jackson*, 600 F.3d 1007, 1012 (8th Cir. 2010) (holding that "the extent of any resulting injury, while material to the question of damages and informative as to the likely degree of the force applied, is not in and of itself a threshold requirement for proving" an excessive force claim). However, the extent of a plaintiff's injuries may constitute evidence of the amount and type of force used, and a greater than *de minimis* use of force is required. "Even where the force is unjustified, 'not every push or shove violates the Constitution, but any use of force greater than *de minimis*, or any use of force that is 'repugnant to the conscience of mankind,' does." *Burt v. Nurse R.N.,* No. 4:19-CV-00040-SMR-CFB, 2019 WL 8752341, at *2 (S.D. Iowa Mar. 27, 2019) (citing *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008)).

*Burns v. Eaton*, 752 F.3d 1136, 1139 (8th Cir. 2014) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998)).

The question in this case is whether Smith acted maliciously and sadistically when he sprayed Aaron with chemical spray on June 20, 2024. The Court has carefully reviewed the video recordings of the June 20 incident, and the video clearly shows that Smith administered a very short burst of chemical spray, causing Aaron to get off his bed at which point the noose broke. *See Cell S-11 Footage* at 4:45:02 - 4:45:06. Aaron admits that Smith's use of spray stopped him from harming himself. *See Aaron Deposition* at 66:1-4, 70:10-12.

Smith's use of spray was reasonable under the circumstances. Most importantly, he interrupted Aaron's suicide attempt. There is no indication Smith had any other reason to spray Aaron. Aaron's back was facing Smith, he was mostly covered in a sleeping bag, and Smith did not have a key to the cell. Spraying Aaron worked to interrupt him while he was twisting the noose around his neck, resulting in him stepping off the bed and breaking the noose.

Additionally, the video clearly shows that Smith released only one short burst of spray. Aaron acknowledged he was not sprayed directly in the face and did not suffer any injury beyond discomfort.[7] *See Aaron Deposition* at 76:8-14, 95:20-96:7.

---

[7] It is well settled that a limited use of mace or chemical spray to control a recalcitrant inmate does not constitute excessive force. *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000) (finding a limited application of chemical spray a "tempered

And even assuming Smith did not specifically warn Aaron he would use chemical spray beforehand, as Aaron alleged in his deposition testimony (*Aaron Deposition* at 51:3-10, 81:5-15), there are no other factors indicating that Smith used an excessive amount of force.  "[U]nder current case law, a failure to warn that force will be used, standing alone, will generally not preclude summary judgment in an officer's favor.  Generally, there must be other conduct."  *See Wright v. State of Arkansas*, No. 4:15-CV-452-BSM-BD, 2016 WL 3023845, at *3 (E.D. Ark. Apr. 26, 2016), *report and recommendation adopted,* No. 4:15CV00452 BSM, 2016 WL 3024081 (E.D. Ark. May 25, 2016) (citing *Walker v. Bowersox,* 526 F.3d 1186, 1189 (8th Cir. 2008) (failed to warn coupled with "super-soaker" amount of spray); *Treats v. Morgan, supra* (prolonged burst of pepper spray without warning and inmate denied shower and clean clothes/bedding for three days afterwards)*; and Lawrence v. Bowersox,* 297 F.3d 727, 730, 732 (8th Cir. 2002) (inmates' faces, bodies, and cells soaked with pepper spray from a MK-46); *Foulk v. Charrier*, 262 F.3d 687, 692 (8th Cir. 2001) (inmate awakened and sprayed with no warning, then sprayed again after becoming compliant, and not allowed to shower for days)).  Likewise, in *Burns*, the Eighth Circuit distinguished its cases finding the use of chemical spray

---

response" to control a recalcitrant inmate who had refused and questioned a direct order from his supervisor and refused to return to his barracks); *Treats v. Morgan,* 308 F.3d 868, 873 (8th Cir. 2002) ("The test is whether the officer's use of force was reasonable under the circumstances, or whether it was punitive, arbitrary, or malicious.").

punitive or arbitrary, stating "the few cases where we denied summary judgment in Eighth Amendment excessive force claims based on pepper spraying have involved no warning this force would be used, no apparent purpose other than inflicting pain, use of unnecessary 'super-soaker' quantities of the chemical, refusal to allow the victim to wash off the painful chemical for days, and/or use of additional physical force." 752 F.3d at 1140.

In these circumstances, Smith's use of chemical spray did not constitute excessive force but instead constituted a good faith effort to prevent Aaron from hanging himself. Accordingly, Aaron cannot establish a constitutional violation occurred, and Smith is entitled to qualified immunity.

## 2.    Retaliation Claims

In his Amended Complaint, Aaron claimed that Smith sprayed him and issued him a disciplinary on June 20 in retaliation for Aaron's prior reports of criminal activity in the prison.[8] Doc. No. 4 at 7. To succeed on a § 1983 retaliation claim, a plaintiff must prove: (1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing the activity; and (3) that the adverse action was

---

[8] Smith asserts that Aaron may have abandoned his retaliation claim based on the use of chemical spray because he testified that he was willing to let the spraying incident go and would not have sued but for the "frivolous disciplinary." *See Aaron Deposition* at 77:4-17; Doc. No. 38 at 19.

motivated at least in part by the exercise of the protected activity. *Gonzalez v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020); *Spencer v. Jackson Cnty.*, 738 F.3d 907, 911 (8th Cir. 2013). Speculative and conclusory, or *de minimis* allegations cannot support a retaliation claim. *See Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam). A plaintiff must also prove a causal connection between the constitutionally protected activity and the adverse action. *Revels v. Vincenz,* 382 F.3d 870, 876 (8th Cir. 2004). Temporal proximity between a protected activity and an adverse action "is relevant but not dispositive." *Wilson v. Northcutt*, 441 F.3d 586, 592 (8th Cir. 2006) (citing *Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1136 (8th Cir. 1999)). To succeed on a retaliation claim, a plaintiff must provide affirmative evidence of a retaliatory motive. *See Haynes v. Stephenson,* 588 F.3d 1152, 1157 (8th Cir. 2009); *see also Wilson*, 441 F.3d at 592 ("[Plaintiff's] belief that [defendant] acted from a retaliatory motive is insufficient.").

Aaron's reports of criminal activity in the prison may constitute protected activity. However, he acknowledged that he merely believed Smith would know about these reports – he did not personally inform Smith, and Smith never threatened him. *See Aaron Deposition* at 38:1-4, 42:15-19. Accordingly, Aaron has come forward with no evidence of a motive on Smith's part to retaliate against him. Further, Smith had a reason to spray Aaron on June 20 – he stopped Aaron from hanging himself. And he had a reason to write the disciplinary – Aaron had wrapped

himself in a sleeping bag, blocking the view into the cell – and as he acknowledged, that was a violation of a prison rule. *See Aaron Deposition* at 84:23-25. A retaliatory discipline clam fails if there is some evidence that the inmate violated a prison rule. *See Sanders v. Hobbs*, 773 F.3d 186, 190 (8th Cir. 2014). Aaron's retaliation claims therefore fail as a matter of law and Smith is entitled to qualified immunity on these claims.

## V.  Conclusion

For the reasons stated herein, Smith's motion for summary judgment should be GRANTED. Aaron's claims should be dismissed with prejudice.

SO RECOMMENDED this 2nd day of July, 2026.

_____
UNITED STATES MAGISTRATE JUDGE